J. C. POLLOCK, Jr., Appellant,

v.

Earl CHANCELLOR, Appellee.

No. 6156.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 5, 1957.

Rehearing Denied Jan. 8, 1958.

Lipscomb & Lipscomb, Beaumont, for appellant.

Tatum, Camp & Ball, H. P. Robichau, Jr., Beaumont, for appellee.

ANDERSON, Justice.

An automobile that was being driven by appellee, Earl Chancellor, crashed into the rear end of one that was being driven by appellant, J. C. Pollock, Jr., while both vehicles were proceeding in the same direction along a public highway. Appellant sued appellee for damages. Appellee answered and cross-acted. A jury, in response to special issues, found both parties to have been guilty of negligence that proximately caused the collision. Motion by appellant for judgment non obstante veredicto having been first overruled, judgment was rendered that both parties take nothing. The plaintiff (appellant) duly filed and presented his motion for new trial. The motion was overruled and this appeal was perfected. Only the plaintiff appealed.

The collision occurred about 9:00 p. m., August 17, 1956, on the Houston-Beaumont highway, just a short distance outside Beaumont's west boundary. The vehicles were proceeding toward Beaumont, or eastward. The highway pursued a general east-west course in the vicinity and was straight and level for long distances both east and west of where the collision occurred. It was paved to a width of 36 feet and had three traffic lanes marked on it. It was dry at the time. Weather conditions and general visibility were good.

Appellant entered upon the highway just briefly before the collision occurred. He entered from the west driveway of a motel he operated adjacent to the north side of the highway. The collision occurred approximately 327 feet east of where a projection of the driveway would have crossed the highway.

Appellee had begun his own journey not a great deal farther west, at Amelia. He was returning to his home in Beaumont. He testified that he was driving at a speed of fifty miles per hour along the southernmost of the three traffic lanes, which was his proper lane; that an automobile driven by some third person, in the middle traffic lane, overtook and passed him in the vicinity of appellant's motel; that he was watching that car, expecting it to cut back in front of him, and did not see appellant's automobile until he was within 20 or 25 feet of it; that when he did see appellant's automobile it was crossing the highway at an angle behind the car that had just passed; that appellant drove on into the south traffic lane; that he, appellee, thereupon turned his own car to the left in an effort to avoid the collision but was too close upon appellant's car. Appellee's car came to a stop astride the dividing line between the south and middle traffic lanes. Skid marks made by its tires led back from this point for a distance of about sixty feet. For the most part, they were in the south traffic lane.

Appellant's version of what transpired related principally to his own conduct. He said he stopped and looked right and left before driving onto the highway; that, as one usually could, he saw car lights to the west but none in close proximity; that he could not say that he saw appellee's car or its lights; that, having concluded that he could do so safely, he drove onto the highway and directly across it to its south lane, turned left into the latter, and was driving along it at a speed of 35 or 40 miles per hour when his car was struck. According to his testimony he had driven in the south traffic lane for more than 300 feet before he was overtaken. He said he did not see the lights of appellee's car and was not aware of the car's approach before the car struck his own. And he denied that he saw a car pass just before he drove upon the highway. His wife corroborated his testimony in some particulars and also testified that her attention was attracted by the high speed of an eastbound automobile that passed the motel just before the collision occurred.

Appellant's car continued along the highway for more than 400 feet after being struck and finally came to rest in a side ditch. Its rear end, particularly in the vicinity of the left fender, was rather badly crumpled. The frame on the left side was bent and the left end of the bumper and the left fender were mashed against the left rear tire, which blew out.

The jury found that both appellant and appellee failed to keep a proper lookout and that the conduct of each in this respect was a proximate cause of the collision. They additionally found that appellant failed to yield the right of way and that this was a proximate cause of the collision. They failed to find that appellee was driving at a reckless and dangerous rate of speed in the existing circumstances or that he failed to apply the brakes of his car seasonably; negative answers were made to the special issues by which these matters were submitted.

Appellant has brought forward ten points of error, all of which present, in one way or another, questions with reference to whether there was any evidence to support such of the jury's findings as were adverse to appellant, or whether there was sufficient evidence to support such findings, or whether such findings are so against the greater weight and preponderance of the evidence as to be clearly wrong. Appellant also contends that the evidence conclusively established that appellee's failure to keep a proper lookout was the sole proximate cause of the collision.

The judgment must be affirmed if the evidence supports the jury's findings that appellant failed to keep a proper lookout and that this was a proximate cause of the collision or if it supports the findings that appellant failed to yield the right of way when he should have yielded it and that this was a proximate cause of the collision. And we have concluded that

the evidence does support such findings. The jurors were at liberty to accept appellee's version of what happened, and this, in large part, they apparently did. They evidently reasoned that appellee's car was in such close proximity when appellant started upon the highway that appellant should have seen it and realized its nearness if he had been keeping a proper lookout, and should have then permitted it to pass before attempting to drive into the south lane. They were at liberty to believe, and probably did, that a third car had passed just before appellant entered the highway and that appellant was watching it, was poised to cross immediately upon its passage, and did speed in front of appellee when it was too late for the latter to stop or swerve his car and thereby avoid the collision. They apparently also believed that if appellee had himself been keeping a proper lookout he would have seen appellant sooner and should have anticipated what the latter intended to do. Reasoning along the general lines indicated was justified by the evidence.

The judgment of the trial court is affirmed.